UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CARLOS ESPINOZA, et al.,

                                **Plaintiffs,**

        -against-

LA OFICINA BAR CORP, et al.,

                             **Defendants.**
-----------------------------------------------------------x

                             **REPORT AND**
                             **RECOMMENDATION**

                           **20-CV-1237 (MKB)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      In this wage-and-hour action, plaintiffs Carlos Espinoza, Alberto Lira Flores and Samantha Lira (collectively, "plaintiffs") sue their purported former employers, defendants La Oficina Bar Corp ("La Oficina"), doing business as Puerto De Manta; San Cecilio Restaurant Inc ("San Cecilio"), doing business as Capybara Bar & Restaurant ("Capybara"); Edgar Alvarez; and Rodrigo Gonzalez (collectively, "defendants"), to recover for deficiencies in the wages they were paid and for related damages. See generally Complaint (Mar. 6, 2020) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #1. Currently pending before this Court, on a referral from the Honorable Margo K. Brodie, is plaintiffs' motion for default judgment. See Motion for Default Judgment (July 8, 2021) ("Pl. Mot."), DE #57; Order Referring Motion (July 9, 2021).

      For the reasons that follow, this Court recommends that the District Court: (1) deny default judgment as against the individual defendants Edgar Alvarez and Rodrigo Gonzalez for lack of effective service; (2) grant default judgment against defendant San Cecilio totaling $67,096.42, consisting of $13,414.50 in unpaid minimum or agreed-upon wages, $5,313.71 in unpaid overtime compensation, $351.00 in spread-of-hours compensation, $30,000 in statutory

damages, and $19,079.21 in liquidated damages; (3) grant default judgment against defendant

La Oficina totaling $7,920.00, consisting of $760.00 in unpaid minimum wages, $6,400.00 in

statutory damages, and $760.00 in liquidated damages; (4) award plaintiffs pre-judgment

interest against each defendant at the rate of 9 percent per year as discussed herein, until the

date final judgment is entered; (5) award plaintiffs post-judgment interest against each

defendant at the statutorily prescribed rate from the date judgment is entered until the judgment

is paid; and  (6) award plaintiffs an automatic increase of 15 percent, as provided by New

York Labor Law § 198(4), if any amounts awarded here remain unpaid upon the expiration of

90 days following the entry of judgment, or 90 days after expiration of the time to appeal and

no appeal is then pending, whichever is later.  In the alternative, in the event that the District

Court declines to adopt this Court's recommendation that plaintiffs' motion for default

judgment be denied as against defendants Edgar Alvarez and Rodrigo Gonzalez, this Court

recommends that the judgment against San Cecilio be entered jointly and severally against

defendants San Cecilio, Alvarez and Gonzalez.

## FACTUAL ALLEGATIONS AND FINDINGS

I.     **Introduction**

The facts described herein are drawn primarily from the allegations contained in

plaintiffs' Complaint and their affidavits, which they expanded upon (and to some extent

contradicted) at an evidentiary hearing held before this Court.  Unless otherwise noted herein,

plaintiffs' affidavits were, for the most part, supported by their hearing testimony.  Although

plaintiffs' testimony was largely credible, their recollections of details—such as the hours

worked and pay received—were imperfect and in some instances unreliable.  See, e.g.,

Transcript of January 14, 2022 Hearing ("1/14/22 Tr.") at 28, DE #70 ("[W]hatever's in the

affidavit. I just remember that I'm not paid and stuff.").  Where plaintiffs' affidavits or hearing testimony claim that plaintiffs worked longer hours than alleged in their pleading, the Court relies on the lower estimates contained in the Complaint, because a plaintiff's recovery on a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see Young Ok v. Family Bob, 20-CV-906 (ENV), 2021 U.S. Dist. LEXIS 15713, at *3 n.2 (E.D.N.Y. Jan. 26, 2021), adopted, (E.D.N.Y. Mar. 17, 2021).  This limitation is intended to ensure that a defendant has been given adequate notice of the extent of the damages it could face upon its default.  See, e.g., Alonso v. New Day Top Trading, Inc., 18cv4745 (PAE) (DF), 2020 WL 9815184, at *7 (S.D.N.Y. June 29, 2020), adopted, 2021 WL 4691320 (S.D.N.Y. Oct. 7, 2021); Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F.Supp.3d 336, 345-46 (S.D.N.Y. 2014); Gucci Am., Inc. v. Gold Center Jewelry, 997 F.Supp. 399, 404 (S.D.N.Y. 1998) ("The rationale for the rule, insofar as it applies to default judgments, 'is that default is tantamount to consent to the entry of judgment, but this consent is effective only to the extent that it was duly informed.'") (quoting 10 James W. Moore, Moore's Federal Practice § 54.71, at 54-127 (3d ed. 1997)), rev'd on other grounds, 158 F.3d 631 (2d Cir. 1998).  And where a plaintiff's affidavits and testimony conflict in their estimates of hours worked, the Court adopts the lower estimate.  See Gomez v. El Rancho de Andres Carne de Tres Inc., No. CV 2012-1264(CBA)(MDG), 2014 WL 1310296, at *7 (E.D.N.Y. Mar. 11, 2014) (crediting lower estimate of hours in calculating damages when plaintiff asserted different estimates in various submissions), adopted, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014); Huerta v. Bakery, No. 10-CV-4754 (RJD)(JO), 2012 WL 1100647, at *10 (E.D.N.Y. Feb. 17, 2012) ("where the plaintiffs assert inconsistent facts

with respect to an element of the damages calculation, I resolve such inconsistencies in the defendants' favor"), <u>adopted in relevant part</u>, 2012 WL 1107655 (E.D.N.Y. Mar. 30, 2012); <u>Solis v. Tally Young Cosmetics, LLC</u>, No. 09–CV–4804 (SJ)(JO), 2011 WL 1240341, at *12 n.12 (E.D.N.Y. Mar. 4, 2011) ("Because [plaintiff's] lower estimates rebut the higher ones, I rely on the former in calculating the damages that have been proved to a reasonable certainty."), <u>adopted</u>, 2011 WL 1240108 (E.D.N.Y. Mar. 30, 2011).[1]

The corporate defendants are La Oficina and San Cecilio, and the individual defendants, Edgar Alvarez and Rodrigo Gonzalez, are alleged, upon information and belief, to be owners, shareholders, officers or managers of defendants' "business," <u>see</u> Compl. ¶¶ 17-22; according to the pleading, that "business" consisted of two full-service restaurants, located on the same block at 853 and 859 Wyckoff Avenue, in Ridgewood, Queens, and doing business as Capybara Bar and Restaurant and Puerto De Manta, respectively.[2] <u>See</u> Compl.

---

[1] The Court has, however, ignored minor discrepancies between dates alleged in the Complaint and those testified to at the hearing, where the Complaint's allegations are based on approximations, the hearing testimony was consistent as among the plaintiffs and the variance from the pleading does not materially impact the calculation of damages. <u>Compare, e.g.</u>, Compl. ¶ 24 ("defendants employed the plaintiff Carlos Espinoza approximately from July 2019 until January 18, 2020") <u>with</u> Transcript of February 10, 2022 Hearing ("2/10/22 Tr.") at 24, DE #72 (testifying that he stopped working at Capybara on January 20, 2020) <u>and</u> Compl. ¶ 27 ("defendants paid the plaintiff Carlos Espinoza no wages from approximately December 28, 2019, through the end of his employment") <u>with</u> 2/10/22 Tr. at 29-30 (testifying that he was not paid any wages after December 24, 2019); <u>see also</u> <u>Chuchuca v. Creative Custom Cabinets Inc.</u>, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *9 n.8 (E.D.N.Y. Nov. 25, 2014) (resolving discrepancy in employment period in favor of plaintiff's testimony and longer term of employment because "date in the complaint was an approximation").

[2] Although the Complaint does not specifically allege that the corporate entities operated the restaurants, the caption names "La Oficina Bar Corp d/b/a Puerto De Manta" and "San Cecilio Restaurant Inc d/b/a Capybara Bar and Restaurant." Further, plaintiffs allege that collectively, "defendants' business [is a] full-service restaurants [sic] doing business as Capybara Bar and Restaurant and Puerto De Manta[.]" Compl. ¶ 16. The Court takes judicial notice that, according to the New York Secretary of State database, La Oficina designated 859 Wyckoff Avenue for service of process, and San Cecilio designated 853 Wyckoff Avenue for service of process. <u>See</u> https://apps.dos.ny.gov/publicInquiry/EntityListDisplay (last visited Feb. 25, 2022).

¶ 16.  The Complaint alleges that all defendants are joint employers and are legally responsible for one another's labor law violations.  See Compl. ¶ 23.

## II.    Findings of Fact

Plaintiff Carlos Espinoza worked at Capybara as a cook from July 2019 until January 20, 2020, when the restaurant closed.  See Compl. ¶¶ 24-25; Affidavit of Carlos Espinoza dated July 7, 2021 (July 8, 2021) ("Espinoza Aff.") ¶¶ 9-10, DE #58; 2/10/22 Tr. at 21-22, 24, 33.  Mr. Espinoza was hired by defendant Rodrigo Gonzalez, who told Mr. Espinoza that he was Capybara's owner, and he was responsible, at the outset, for setting Mr. Espinoza's schedule and determining his pay.  See 2/10/22 Tr. at 22-24.  Towards the end of Mr. Espinoza's employment, defendant Edgar Alvarez, who claimed to be a part-owner of Capybara, took a leading role in managing the restaurant.  See 2/10/22 Tr. at 25-28.

From July 2019 until December 24, 2019, Mr. Espinoza worked six days per week, from 2:00 to 11:00 p.m., for a total of 54 hours per week.[3]  See 2/10/22 Tr. at 28.  From December 25, 2019 until January 20, 2020, Mr. Espinoza worked six days per week (sometimes seven days), from 2:00 p.m. until 3:00 a.m., for a total of approximately 78 hours per week.[4]  See id. at 29.  Defendants paid Mr. Espinoza $14 per hour from the beginning of his employment until December 24, 2019, but failed to pay Mr. Espinoza any wages thereafter.[5]  See id. at 29-30.  In addition, from the beginning of his employment until

---

[3] In the Complaint and his affidavit, Mr. Espinoza alleged that he worked approximately 60 hours per week until November 2019.  See Compl. ¶ 26; Espinoza Aff. ¶ 11.

[4] Mr. Espinoza alleged in the Complaint, and in his affidavit, that he worked 94 hours per week after November 2019.  See Comp. ¶ 26; Espinoza Aff. ¶ 11.  Given the inconsistencies in Mr. Espinoza's estimates of the hours that he worked, the Court applies the low end of the estimate to which he testified, here, 78 hours per week.

[5] As previously noted, the Complaint and Mr. Espinoza's affidavit state that he was paid until December 28, 2019.  See Compl. ¶ 27; Espinoza Aff. ¶ 12.

November 2019, defendants failed to pay Mr. Espinoza for every hour that he worked.  See Espinoza Aff. ¶ 13.  During this time period, Mr. Espinoza claims to be owed $950 for the hours he was "shorted."[6]  See id.; see 2/10/22 Tr. at 30.  Defendants also failed to pay Mr. Espinoza an overtime premium for those hours he worked in excess of 40 hours per week and failed to pay him a spread-of-hours premium for those days that he worked in excess of 10 hours.  See Compl. ¶¶ 41-42; Espinoza Aff. ¶¶ 16-17; 2/10/22 Tr. at 31.

Plaintiff Alberto Lira Flores ("Mr. Lira") alleges that he worked at Capybara as a cook, from on or about August 9, 2019 until January 20, 2020.  See Affidavit of Alberto Lira Flores dated July 7, 2021 (July 8, 2021) ("7/7/21 A. Lira Aff.") ¶¶ 9-10, DE #59; see also 2/10/22 Tr. at 4 (estimating start date as "around August 7th"); Compl. ¶ 29.  Mr. Lira was hired by defendant Edgar Alvarez, who directed the employees' duties, determined their pay and set their work schedules; the manager, Lily, told Mr. Lira that Alvarez co-owned Capybara with Rodrigo Gonzalez, who was the majority shareholder.  See 2/10/22 Tr. at 10-11.

From August 9, 2019 to December 24, 2019, Alberto Lira worked approximately 36 hours per week (8:00 a.m. to 2:00 p.m. for six days per week) at $15 per hour.[7]  See 2/10/22

---

[6] The Complaint, however, is devoid of allegations that Mr. Espinoza was not paid at all for straight-time hours other than at the end of his tenure.  The Court relies on Mr. Espinoza's allegations in the Complaint regarding the pay he received, as he cannot obtain in a default judgment damages that are different in kind or more than he demanded in the Complaint.  See Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007); Fed. R. Civ. P. 54(c).  Moreover, Mr. Espinoza has not provided any detail regarding how the alleged $950 underpayment accrued.  See Espinoza Aff. ¶ 13 ("In many weeks, the amount of money that I was supposed to receive based on the hours I worked . . . exceeded the amount of money that defendants paid me."); 2/10/22 Tr. at 30-31 ("And before that, the checks were just -- they weren't enough for what I worked.").

[7] In the Complaint, Mr. Lira alleged that he worked approximately 51 hours per week until January 2020.  See Compl. ¶ 31.  Counsel explained that because Mr. Lira's "memory was clouded" by his anger at not being paid appropriately, his original affidavit (and presumably, the Complaint) contained "errors."  See Letter (Aug. 13, 2021), DE #66.  Therefore, the Court applies the facts set forth in Mr. Lira's amended affidavit and hearing

Tr. at 4, 6-7; 7/7/21 A. Lira Aff. ¶¶ 11-12.  Then, from December 25, 2019 until January 20, 2020, Mr. Lira worked six days per week, from 8:00 a.m. to 6:00 p.m., with a 30-minute lunch break, for a total of 57 hours per week; Mr. Lira was paid only $300 during that period. See 7/7/21 Aff. ¶¶ 11-12; 2/10/22 Tr. at 4, 7, 8; see also Compl. ¶ 32.  On or about January 20, 2020, Mr. Lira ceased working at Capybara because he was not being paid and the restaurant was closing.  See 2/10/22 Tr. at 7-8.  Throughout his employment at Capybara, defendants failed to pay Mr. Lira an overtime premium for those hours he worked in excess of 40 hours per week.  See Compl. ¶ 41; 7/7/21 A. Lira Aff. ¶ 15.

After Mr. Lira stopped working at Capybara, Monica, the manager of the neighboring restaurant, Puerto De Manta, hired him to work there.  See 2/10/22 Tr. at 13, 18.  From January 20, 2020 until March 6, 2020, Mr. Lira worked at Puerto De Manta for four days per week, eight hours per day.[8]  See Affidavit of Alberto Lira Flores dated February 2, 2021 (Feb. 3, 2021) ("2/2/21 A. Lira Aff.") ¶¶ 11-12, DE #43; Compl. ¶ 31.  At Puerto De Manta, Mr. Lira was paid "$100 per day, and no wages for [his] final two workdays."  2/2/21 A. Lira Aff. ¶ 13; see Compl. ¶ 32 ("Then, the defendants started to pay the plaintiff Alberto Lira Flores $100 per day, but failed to pay him for two of his workdays [during his] last week.").

Plaintiff Samantha Lira ("Ms. Lira"), Alberto Lira's daughter, alleges that she worked at Capybara from September 2019 to January 18, 2020, as a bartender and server.  See

---

testimony as to this time period, since those facts would result in a lower damages award, rather than the Complaint's apparently overstated allegations.  See cases cited supra pp. 3-4.

[8] In contrast, in his revised affidavit and at the hearing, Mr. Lira stated that during this period, he worked six days per week, from 6:00 p.m. until 2:00 a.m. or 3:00 a.m or later, with a 30-minute lunch break.  See 7/7/21 A. Lira Aff. ¶¶ 11-12; 2/10/22 Tr. at 8.  Since those facts differ materially from the allegations in the Complaint and Mr. Lira's original affidavit, and would result in a significantly higher award of unpaid wages, the Court relies on the allegations in the Complaint and Mr. Lira's original affidavit for this time period.

Affidavit of Samantha Lira dated July 7, 2021 (July 8, 2021) ("S. Lira Aff.") ¶ 9, DE #60; see also 1/14/22 Tr. at 18, 23, 34.  Ms. Lira worked at Capybara six days per week for approximately 49.5 hours per week, except for the week from December 27, 2019 to January 4, 2021, when Ms. Lira took off from work during the holidays.  See S. Lira Aff. ¶ 11; see also 1/14/22 Tr. at 26-27.  Defendants paid Ms. Lira approximately $8.50 per hour until December 27, 2019, but failed to pay her any wages thereafter.[9]  See S. Lira Aff. ¶ 12; see also Compl. ¶ 37.  Throughout her employment, Ms. Lira was paid no overtime premium for those hours she worked in excess of 40 hours per week.  See Compl. ¶ 41; S. Lira Aff. ¶ 15.

All three plaintiffs allege that defendants failed to provide them with a wage notice at the time of their hiring, and throughout plaintiffs' employment, defendants failed to provide them with a wage statement with each payment of their wages.  See Compl. ¶¶ 43-44; Espinoza Aff. ¶¶ 18-19; 7/7/21 A. Lira Aff. ¶¶ 16-17; S. Lira Aff. ¶¶ 16-17.  Each plaintiff's wages were paid in cash.  See Compl. ¶¶ 28, 33, 38.

Plaintiffs sue defendants for failing to provide plaintiffs with: minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") (First Claim), and the New York Labor Law § 650 *et seq*. ("NYLL") (Second Claim); a wage notice at the time of hire and detailed paystub information on paydays, under the NYLL Wage Theft Prevention Act ("WTPA"), see N.Y. Lab. Law §§ 195(1)(a), 195(3) (Third Claim); and, with

---

[9] At the hearing, Ms. Lira could not remember whether she was paid $8.00 or $8.50 per hour, how much pay she actually received from defendants or when her employment with defendants ended.  See 1/14/22 Tr. at 25, 27-28, 29.  Instead, Ms. Lira deferred to the facts contained in her affidavit.  See id. at 29.

respect to plaintiff Espinoza, compensation under New York's spread-of-hours provision, see

N.Y. Comp. Codes R. & Regs. tit.12, § 146-1.6 (Second Claim).[10]

## PROCEDURAL HISTORY

Plaintiffs filed the instant Complaint on March 6, 2020, see generally Compl., and

docketed multiple affidavits of service with the Court, indicating that each of the four

defendants had been served, see Summons Returned Executed [for Rodrigo Gonzalez] (June

11, 2020), DE #16; Summons Returned Executed [for Edgar Alvarez] (June 11, 2020), DE

#17; Summons Returned Executed [for San Cecilio Restaurant Inc.] (June 11, 2020), DE #18;

Summons Returned Executed [for La Oficina Bar Corp] (June 11, 2020), DE #19.  After

defendants failed to answer or otherwise appear, plaintiffs sought certificates of default

pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("FRCP").  See Request for

Certificate of Default (Nov. 11, 2020), DE #21; Request for Certificate of Default (Nov. 11,

2020), DE #23; Request for Certificate of Default (Nov. 11, 2020), DE #25; Request for

Certificate of Default (Nov. 11, 2020), DE #27.  On November 19, 2020, the Clerk of the

Court entered defaults as to each of the two individual defendants, see Clerk's Entry of Default

(Nov. 19, 2020), DE #29; Clerk's Entry of Default (Nov. 19, 2020), DE #30, but denied

plaintiffs' application for entry of default against the corporate defendants, see Docket

Notations dated November 19, 2020.  As a result, plaintiffs served the corporate defendants

through the New York Secretary of State.  See Summons Returned Executed [for San Cecilio

Restaurant Inc.] (Dec. 4, 2020), DE #32; Summons Returned Executed [for La Oficina Bar

---

[10] The Complaint also includes a Fourth Claim, for Declaratory Relief, see Compl. ¶¶ 79-84, which plaintiffs do not appear to be pursuing in their motion for default judgment, see generally Memorandum in Support (July 8, 2021) ("Pl. Mem."), DE #61.

Corp] (Dec. 4, 2020), DE #33.  On December 28, 2020, the Clerk of the Court entered

notations of default against the corporate defendants.  See Clerk's Entry of Default [for San

Cecilio Restaurant Inc] (Dec. 28, 2020), DE #38; Clerk's Entry of Default [for La Oficina Bar

Corp] (Dec. 28, 2020), DE #39.

After plaintiffs moved for default judgment, Judge Brodie referred the motion to the

undersigned magistrate judge.  See Order Referring Motion (Feb. 8, 2021).  On April 15,

2021, this Court directed plaintiffs to address in writing whether each of the individual

defendants had been properly served with the summons and Complaint.  See Order to Show

Cause (Apr. 15, 2021), DE #46.  On April 30, 2021, plaintiffs submitted a brief arguing that

the individual defendants had been properly served.  See Response to Order to Show Cause

(Apr. 30, 2021) ("4/30/21 Brief"), DE #47.  Plaintiffs thereafter docketed amended service

affidavits regarding the individual defendants.  See Response to Order to Show Cause (May 7,

2021), DE #50.

The Court scheduled an in-person evidentiary hearing for June 4, 2021 in connection

with plaintiffs' motion for default judgment, and directed that the process server and each

plaintiff appear.  See Scheduling Order (May 19, 2021).  After the Court adjourned the

hearing, at plaintiffs' request, to June 11, 2021, see Order granting Motion to Adjourn

Conference (May 25, 2021), plaintiffs filed a motion on June 10, 2021, requesting that the

hearing be held remotely, see Motion to Appear by Telephone (June 10, 2021), DE #54.  Later

that day, before the Court had an opportunity to address plaintiffs' first application, plaintiffs

moved to withdraw their motion for default judgment and to cancel the hearing, on the ground

that "one of the plaintiffs has an improved recollection of the facts and that this information

affects the calculation of damages[.]"  Motion to Withdraw (June 10, 2021), DE #55.   The

Court granted plaintiffs' request.  See Order (June 10, 2021).

On July 8, 2021, plaintiffs renewed their motion for default judgment.  See Pl. Motion.

Following Judge Brodie's referral of the instant motion to the undersigned magistrate judge,

the Court held an evidentiary inquest hearing, by videoconference, on January 14, 2022 and

February 10, 2022.  See Minute Entry (Jan. 14, 2022), DE #68; Minute Entry (Feb. 10,

2022), DE #71.  To date, defendants have not responded or otherwise appeared in this action.

## DISCUSSION

## I.  Default Judgment Standard

After the Clerk of the Court enters a Certificate of Default, the District Court may, on

a plaintiff's application, enter a default judgment if a defendant "has failed to plead or

otherwise defend" an action.  See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y.

Local Civ. R. 55.2(b).  A defendant's default ordinarily constitutes an admission of all well-

pleaded factual allegations in the complaint except those relating to damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis

Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

This principle is, however, subject to several exceptions and limitations.  First, a

pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment,

the factual allegations in the complaint must themselves be sufficient to establish a right to

relief.  See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966,

at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465

(RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)), adopted, 2016 WL 2758272

(E.D.N.Y. May 12, 2016); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").  Nor will a complaint's factual allegations be considered "well-pleaded" where they are "contrary to the uncontroverted material in the file of the case[.]"  Chuchuca, 2014 WL 6674583, at *5 (quoting Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)); see Getty Images (US) Inc. v. Advernet, Inc., 797 F.Supp.2d 399, 439 (S.D.N.Y. 2011).  Moreover, the damages amount pleaded by a plaintiff is not deemed to be established by the default; the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether to hold an evidentiary hearing.  See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).  Finally, as noted earlier in this opinion, the relief requested on a default judgment may not differ in kind from or exceed in amount what was demanded in the complaint.  See Silge, 510 F.3d at 160; Fed. R. Civ. 54(c).

## II.     Service of the Complaint

Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment.  See Chen v. Best Miyako Sushi Corp., 16-CV-2012 (JGK) (BCM), 2021 WL 707273, at *8 (S.D.N.Y. Feb. 1, 2021), adopted, 2021 WL 706412 (S.D.N.Y. Feb. 19, 2021); Miranda v. Astoria Provisions, LLC, 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *3 (E.D.N.Y. July 24, 2020), adopted, 2020 WL 5810160 (E.D.N.Y.

Sept. 30, 2020); see also Mickalis Pawn Shop, LLC, 645 F.3d at 133 ("Before a court grants a

motion for default judgment, it may first assure itself that it has personal jurisdiction over the

defendant.") (internal quotation marks, brackets, and citation omitted).   "Default judgments

are disfavored, so before a district court will enter one, it must ensure that the defaulting

defendants received notice of the claims against them and were provided an opportunity to

answer those allegations." Johannes Baumgartner Wirtschafts-Und Vermögensberatung GmbH

v. Salzman, 969 F.Supp.2d 278, 287 n.6 (E.D.N.Y. 2013) (citing State St. Bank & Trust Co.

v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir. 2004)).   Plaintiffs bear the

burden of proving that service was adequate.   See Rahman v. Red Chili Indian Café, Inc., No.

17-CV-5156 (RA), 2021 WL 2003111, at *2 (S.D.N.Y. May 19, 2021).

### A.       Service on the Individual Defendants

Rule 4 of the FRCP permits service of process on an individual in accordance with the

law of the forum state—here, New York.   See Fed. R. Civ. P. 4(e)(1).   Under New York law,

service on a natural person may be accomplished "by delivering the summons within the state

to a person of suitable age and discretion at the actual place of business . . . of the person to be

served and . . . by mailing the summons by first class mail to the person to be served at his or

her actual place of business[.]"   N.Y. C.P.L.R. § 308(2).   "The person to whom delivery of

service is made must objectively be of sufficient maturity, understanding, and responsibility

under the circumstances so as to be reasonably likely to convey the summons to the

defendant." Finkel v. Genergy Elec. Servs. Co., LLC, No. 08-CV-446 (RRM), 2010 WL

8445099, at *2 (E.D.N.Y. Aug. 24, 2010) (internal quotation marks, brackets, and citation

omitted), adopted, 2012 WL 896212 (E.D.N.Y. Mar. 15, 2012).   "New York courts have

construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a 'clear identification of the work performed by her with that place of business.'"  Velez v. Vassallo, 203 F.Supp.2d 312, 325 (S.D.N.Y. 2002) (collecting cases).  "Defendants can have more than one 'actual place of business' for purposes of C.P.L.R. [§] 308."  Ting Qiu Qiu v. Shanghai Cuisine, Inc., 18 Civ. 5448 (ER), 2020 WL 2115409, at *3 (S.D.N.Y. May 4, 2020).

Plaintiffs herein purported to have served defendants Edgar Alvarez and Rodrigo Gonzalez in compliance with section 308(2) of New York's Civil Practice Law and Rules (the "CPLR") by leaving copies of the summons and Complaint with "John Doe," at 859 Wyckoff Avenue, and by thereafter mailing copies to each defendant at the same address.  See 4/30/21 Brief at 4.  In his amended affidavit, the process server explained that "John Doe" (hereafter, "Mr. Doe") "refused to provide his name, but when asked if he was authorized to accept legal documents, he answered yes."  Affidavit of Service (May 7, 2021), DE #50-1; Affidavit of Service (May 7, 2021), DE #50-2.  At the hearing, the process server expanded upon this encounter.  He testified that when he arrived at 859 Wyckoff Avenue, the metal outer gate was raised and he was able to see several men inside.  See 1/14/22 Tr. at 10, 12.  After the witness knocked on the window, Mr. Doe came to the door and the process server asked, in English, for defendants Alvarez and Gonzalez.  See id. at 10, 12-13.  Mr. Doe replied in English that "they weren't there at the time" and that he did not speak English.  Id. at 10, 12-13, 14.  The process server explained a second time, this time in Spanish, that he was serving legal documents and asked Mr. Doe if he was "able" to accept them.  See id. at 10, 13.  Mr. Doe

replied in the affirmative, in Spanish, and "snatched" the papers from the process server.  See
id. at 10, 11, 13, 14.  Mr. Doe refused to provide his name and did not identify his
relationship with the restaurant or the individual defendants.  See id. at 10, 14.  Mr. Doe then
stepped outside to lower the outer gate, but when the process server attempted to photograph
Mr. Doe holding the summons and Complaint, Mr. Doe ran back inside, leaving the gate half
closed.  See id. at 10, 11, 13-14.  At the hearing, the process server produced a photograph,
which depicts a restaurant storefront with signage stating "Puerto De Manta Bar Lounge," and
an awning with the name "La Oficina Sports Bar & Restaurant" and the number "859."  See
id. at 11; Photograph date stamped 5/26/20 at 6:16 p.m. (Jan. 17, 2022), DE #69-1.

This Court concludes that neither defendant Alvarez nor Gonzalez was properly served
at the premises of La Oficina Bar Corp d/b/a Puerto De Manta under section 308(2) of New
York's CPLR: plaintiffs have proffered no evidence that, at the time of service, the premises
to which the summons and Complaint were delivered were the actual place of business of
either of the individual defendants.  A "person's 'actual place of business' must be where the
person is physically present with regularity, and that person must be shown to regularly
transact business at that location."  Pate v. City of Rochester, 6:19-CV-6691-EAW-MWP, —
F.Supp.3d—, 2022 WL 71664, at *7 (W.D.N.Y. Jan. 7, 2022) (quoting Selmani v. City of
New York, 954 N.Y.S.2d 580, 581–82 (2d Dep't 2012)); Ayyaz v. City of New York, No.
19-cv-01412-LTS-SN, 2021 WL 1225684, at *8 (S.D.N.Y. Mar. 31, 2021) (same).   In
addition, a person's "actual place of business" is defined in the CPLR as "any location that
[the person to be served], through regular solicitation or advertisement, has held out as [his]
place of business."  N.Y. C.P.L.R. § 308(6).  "Whether service has been made at one's 'actual

place of business' is a fact-and circumstance-specific inquiry."  Ayyaz, 2021 WL 1225684, at

*7 (brackets, citation and quotation marks omitted).  "In this case, delivery in such a manner

leaves open the issue of whether service was properly effected, particularly when the defendant

has failed to answer the complaint."  Cao Xue Fen v. Yu Choi Wan, CV-09-1336 (SJ), 2009

WL 10712997, at *1 (E.D.N.Y. Dec. 23, 2009), adopted, 2010 WL 11651768 (E.D.N.Y.

Feb. 1, 2010).

　　　First, the Complaint and the affidavits submitted by plaintiffs make no distinction

between the Capybara and Puerto De Manta restaurants, and contain only conclusory

allegations that Alvarez and Gonzalez were "owner[s], shareholder[s], officer[s], or

manager[s] of the defendants' business."  Compl. ¶¶ 17, 20; see, e.g., 7/7/21 A. Lira Aff.

¶¶ 3, 8 ("Throughout my employment, the defendant Rodrigo Gonzalez [and defendant Edgar

Alvarez each] was an owner, shareholder, officer, or manager of the defendants' business.").

Each plaintiff further averred in his or her affidavit that Alvarez and Gonzalez actively

participated in the defendants' "business," without distinguishing between the two storefronts.

See, e.g., 7/7/21 A. Lira Aff. ¶¶ 4, 7.  The testimony adduced at the hearing painted a

different picture: although defendant Rodrigo Gonzalez was a majority owner of Capybara, he

had no connection to Puerto De Manta.  See 2/10/22 Tr. at 15-16.  And the evidence of Edgar

Alvarez's link to Puerto De Manta was equivocal at best: according to Alberto Lira, the only

plaintiff employed by Puerto De Manta, he heard hearsay from a manager that Alvarez was the

owner of Puerto De Manta, but he never saw Alvarez at the business during the time Mr. Lira

worked there.  See id. at 17-19.  In fact, he never saw Edgar Alvarez again after Alvarez left

Capybara in December 2019.  See id. at 17.

Plaintiffs have not demonstrated that either individual defendant was regularly present at Puerto De Manta at the time of service.  See Ting Qiu Qiu, 2020 WL 2115409, at *3-4 (finding that plaintiff did not conclusively establish that restaurant was defendants' actual place of business); Fan v. Jenny & Richard's Inc., 17-CV-6963 (WFK), 2019 WL 1549033, at *4 (E.D.N.Y. Feb. 22, 2019) (where testimony established that individual defendant, who had owned the business, sold the business and ceased working there, service at that place of business was ineffective), adopted, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  Nor is there any evidence that Alvarez or Gonzalez held out 859 Wyckoff Avenue, through regular solicitation or advertisement, as his place of business, or any evidence corroborating plaintiffs' conclusory allegations about the individual defendants' connection with the location.  See Ayyaz, 2021 WL 1225684, at *8 (finding service ineffective where plaintiff relied on social media postings and defendant's appearance on the business' website to demonstrate that location was defendant's actual place of business); MA Accessories, Inc. v. Solnicki, No. 07 Civ. 3219(PKC)(DF), 2010 WL 3749213, at *4 (S.D.N.Y. Sept. 24, 2010); cf. Jimenez v. Bosie, LLC, 19 Civ. 11570 (ER), 2021 WL 2941916, at *5 (S.D.N.Y. July 12, 2021) (finding that defendant was served at his actual place of business because he acknowledged being an officer and co-owner of the restaurant, and was listed as a principal on its liquor license).

Further, there is no evidence that the unnamed individual who accepted service confirmed that Alvarez or Gonzalez worked there, nor that he identified himself as a co-worker of Alvarez or Gonzalez.  In fact, based on the process server's testimony, it is unclear whether Mr. Doe understood that he was being asked if he was authorized to accept process on behalf of Alvarez and Gonzalez, rather than the restaurant.  See 1/14/22 Tr. at 10 ("So I asked him if

17

he was able to accept the papers in Spanish.  He replied yes.").  Indeed, while the process server purportedly was attempting to serve all four defendants simultaneously (see DE #16, DE #17, DE #18, DE #19), he testified that he left only two sets of papers.  See 1/14/22 Tr. at 15.  Based on the circumstances described by the process server at the hearing, the Court cannot find that the unnamed individual who accepted service is an appropriate person of suitable age and discretion at the actual place of business of either of the individual defendants.  See Reyes Hernandez v. Delta Deli Mkt Inc., No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *5 (E.D.N.Y. Feb. 12, 2019) ("Beyond conclusory allegations, Plaintiffs do not indicate that any of the Individual Defendants worked at 1060 Flatbush Avenue, the location of service, or had any other affiliation with that location or the unnamed corporate entity on the date service was purportedly effected."); Cao Xue Fen, 2009 WL 10712997, at *1 (finding service ineffective under section 308(2) where process was left with "an unidentified, alleged co-worker of defendant, who refused to tell the process server her name"); Lliviganay v. Cipriani 110 LLC, No. 09 Civ. 0737(LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (denying default judgment, and finding service ineffective under section 308(2), where service affidavits did "not identify the persons to whom copies of the summons and complaint were given, and state[d] only that those unidentified persons described themselves as co-workers of the individual defendants").

Plaintiffs would have the Court infer that Puerto De Manta was the individual defendants' actual place of business at the time of service based solely on the process server's ambiguous testimony as to Mr. Doe's responses that the individual defendants "weren't there at the time" and as to his ability to accept process.  This Court declines to do so.  First,

according to the process server, when he asked Mr. Doe, in English, whether he was authorized to accept on the individual defendants' behalf, Mr. Doe responded that he "couldn't speak English." 1/14/22 Tr. at 12-13. The process server then asked him, in Spanish, if he was authorized, and Mr. Doe "said yes" and "snatched the papers out of my hand and then he proceeded to come out and tried to put down the gate." Id. at 13-14. This is an insufficient basis upon which to conclude that the unnamed individual was in fact authorized to accept service on behalf of Alvarez and Rodriguez. See Tieman v. City of Newburgh, No. 13–CV–4178 (KMK), 2015 WL 1379652, at *7 (S.D.N.Y. Mar. 26, 2015) (finding service on police officers inadequate under section 308(2) even though process server "was told by a sergeant to go to the City Attorney at 83 Broadway, and was told by [a paralegal at City Hall] that she could accept service on behalf of the officers"); Moultry v. City of Poughkeepsie, 154 F.Supp.2d 809, 811-12 (S.D.N.Y. 2001) (holding that service on individual police officers was ineffective even though a clerk accepted service on officers' behalf and "told the process server that he had come to the right place, and that she was empowered to accept personal service for the individual police officers").[11]

---

[11] Plaintiffs do not purport to have served the individual defendants in accordance with either Rule 4(e)(2)(C) of the FRCP or section 318 of the CPLR. See generally 4/30/21 Brief at 4; Fed. R. Civ. P. 4(e)(2)(C) (service on an individual may be effected by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process"); N.Y. C.P.L.R. § 318 ("A person may be designated by a natural person . . . as an agent for service in a writing, executed and acknowledged in the same manner as a deed, with the consent of the agent endorsed thereon"). Plaintiffs have made no showing that Mr. Doe was an agent authorized to accept service on behalf of the individual defendants pursuant to CPLR § 318 or FRCP 4(e)(2)(C). See Ortiz v. Red Hook Deli & Grocery 2015 Corp., 17-CV-7095 (RRM), 2019 WL 4739047, at *4-5 (E.D.N.Y. June 12, 2019), adopted, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019); Prado v. City of New York, No. 12-CV-4239 (RJS), 2015 WL 5190427, at *3 (S.D.N.Y. Sept. 3, 2015) ("a party must present facts and circumstances showing the proper relationship between the defendant and its alleged agent in fact existed—[i]n absence of actual appointment, service of process is ineffective.") (internal quotations and citation omitted).

Accordingly, this Court recommends that plaintiffs' motion for default judgment as to defendants Alvarez and Gonzalez be denied, and that the claims against them be dismissed, on account of ineffective service. Nevertheless, in the event that the District Court concludes otherwise, this opinion addresses the liability of Alvarez and Gonzalez, and calculates the damages for which they would be jointly and severally liable with defendant San Cecilio, had they been properly served.

### B.      Service on the Corporate Defendants

Rule 4 of the FRCP permits service on a corporation in a manner authorized by the law of the forum state. See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A). New York law provides for service of process on a corporation by personally delivering process to New York's Secretary of State. See N.Y. Bus. Corp. Law § 306(b)(1).

After the Clerk of Court denied plaintiffs' request for entry of default against the corporate defendants based on service on Mr. Doe at 859 Wyckoff Avenue, plaintiffs served both corporate defendants by delivery to the Secretary of State. See Summons Returned Executed [for San Cecilio Restaurant Inc.] (Dec. 4, 2020), DE #32; Summons Returned Executed [for La Oficina Bar Corp] (Dec. 4, 2020), DE #33. According to the records of New York's Department of State, both corporations are still listed as active and have not been dissolved. See https://apps.dos.ny.gov/publicInquiry/EntityListDisplay (last visited Feb. 25, 2022). Accordingly, plaintiffs properly served San Cecilio Restaurant Inc and La Oficina Bar Corp pursuant to New York Business Corporation Law § 306(b)(1).

## III.    Liability

The Court next addresses whether the Complaint properly states claims under the FLSA for overtime pay and minimum wage violations, and under the NYLL for the same, as well as

for wage notice and statement violations and failure to pay spread-of-hours compensation.

###### A. The Fair Labor Standards Act — Legal Principles

###### 1. Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In addition, the FLSA sets forth a minimum hourly wage that an employer must pay its employees. See id. § 206(a)(1). An employee may bring suit against her employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."[12] Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work"). "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status. Instead, to be an 'employer,' an individual must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013).

---

[12] The NYLL's definitions with respect to "employer status" are nearly identical to the FLSA's and have been interpreted coextensively. See Jianjun Chen v. 2425 Broadway Chao Rest., LLC, 1:16-cv-5735-GHW, 2017 WL 2600051, at *3 (S.D.N.Y. June 15, 2017) (collecting cases).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.  See Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).  In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The Second Circuit has identified four factors that a court should address in applying, on a case-by-case basis, the economic-realities test when determining employer status: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations and citations omitted).  Even in the absence of "formal control," an entity or individual may constitute an "employer" if that party had "functional control" of the employee.  See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other grounds, 811 F.3d 528 (2d Cir. 2016).  In accordance with these principles, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation . . . ."  Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotation marks and citation omitted); see Herman v. RSR Sec. Servs. Ltd., 172

F.3d 132, 139 (2d Cir. 1999).  Consequently, joint employers, including corporate officers

with the "power to control," may be held jointly and severally liable for FLSA violations.  See

Moon, 248 F.Supp.2d at 236-37 (citations omitted).

In addition, under the FLSA, multiple corporate entities can be liable as the

"employer" under "a joint employer theory based on the theory that they operate as a single

enterprise with significant interrelation of operations."  Apolinar v. R.J. 49 Rest., LLC, 15-

cv-8655 (KBF), 2016 WL 2903278, at *4 (S.D.N.Y. May 18, 2016); see Huer Huang v.

Shanghai City Corp., 459 F.Supp.4d 580, 586 (S.D.N.Y. 2020).  "[C]ourts consider (1)

interrelation of operations, (2) centralized control of labor relations, (3) common management,

and (4) common ownership or financial control."  Apolinar, 2016 WL 2903278, at 4 (quoting

Juarez v. 449 Rest., Inc., 29 F.Supp.3d 363, 367 (S.D.N.Y. 2014)).  Where this theory

applies, courts may impose liability for a violation "not only on the nominal employer but also

on another entity comprising part of the single integrated employer."  Arculeo v. On-Site Sales

& Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005).

### 2.      Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and

one-half times the regular rate of pay for any hours worked in excess of forty per week."

Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013)

(citing 29 U.S.C. § 207(a)).  The FLSA further dictates that nonexempt employees must be

paid a minimum wage.  See 29 U.S.C. § 206(a).  In order to establish liability under the FLSA

for unpaid minimum wages or overtime pay, "a plaintiff must prove that he performed work

for which he was not properly compensated, and that the employer had actual or constructive

knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).  Employers that violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### B.      New York Labor Law – Legal Principles

The NYLL is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees (albeit at a higher rate), as well as overtime compensation.  See N.Y. Lab. Law § 650 et seq.; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").  Like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."  See Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("[T]he analysis of the employment relationship under both statutes is based on the same factors."), adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citation omitted).  However, unlike the FLSA, the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales."  Gunawan, 897 F.Supp.2d at 84.

Another area in which the NYLL differs from the FLSA is the extent to which an employee may recover unpaid wages: Under the FLSA, a plaintiff can recover for unpaid "straight time" only up to the minimum wage rate.  See Villar v. Prana Hosp., Inc., No. 14

Civ. 8211 (RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017), adopted, 2018

WL 3579841 (S.D.N.Y. July 25, 2018); see also Hernandez v. NJK Contractors, Inc., No.

09-CV-4812 (RER), 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015).  Under various

sections of the NYLL, however, a plaintiff can recover for unpaid "straight" time at the

agreed-upon (or regular) rate where it exceeds the minimum wage.  See Shetty v. SG Blocks,

Inc., 20-cv-00550-ARR-SMG, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020); Calle v.

Yoneles Enters., Inc., 16-CV-1008 (NGG), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24,

2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018); Villar, 2017 WL 1333582, at

*4; Kernes v. Global Structures, LLC, 15cv00659(CM)(DF), 2016 WL 880199, at *3

(S.D.N.Y. Mar. 1, 2016); Hernandez, 2015 WL 1966355, at *42.  Section 191 of the NYLL

mandates that workers "be paid . . . in accordance with the agreed terms of employment

. . . ."  N.Y. Lab. Law §§ 191(1)(a)(i), 191(1)(d); see Shetty, 2020 WL 3183779, at *5;

Hernandez, 2015 WL 1966355, at *42; see also N.Y. Lab Law § 198(3).

Another area in which the NYLL differs from FLSA is the NYLL's requirement,

pursuant to several regulations, that an employer pay employees a "spread-of-hours" premium

that is equal to "one additional hour of pay at the basic minimum hourly rate" for each day an

employee works in excess of ten hours.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-

1.6; see also id. § 142-2.4.  Pursuant to a NYLL regulation that governs the hospitality

industry, including restaurants, the spread-of-hours mandate applies to "all employees in

restaurants . . . , regardless of a given employee's regular rate of pay."  Id. § 146-1.6(d).

Unlike the FLSA, the NYLL's WTPA requires that employers provide employees, at

the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1)(a). Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. Lab. Law § 195(3).

### C.      Application of the Law to the Facts

Having set forth the relevant legal standards under the FLSA and NYLL, the Court next considers whether the factual allegations asserted in plaintiffs' Complaint, as clarified by the evidence submitted by affidavit and adduced at the hearing, are sufficient to warrant a finding of liability against each defendant. See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1.      Defendants' Employer Status

Plaintiffs have not sufficiently established that all four defendants together constituted their joint employers for the purposes of the FLSA and NYLL. Plaintiffs' Complaint contains only boilerplate allegations that defendants functioned as joint employers in that they allegedly shared common control of their employees and common policies with respect to wages and hours. See Compl. ¶ 23; see also id. ¶¶ 17-22 (Alvarez and Gonzalez each is "the owner, shareholder, officer, or manager" of the restaurants; and "actively participated in the business of the defendants, exercised substantial control over the functions of the employees of the

26

defendants" and had the authority "to establish the wages and hours of [defendants']

employees"). Conclusory allegations reciting the economic-realities factors are, however,

insufficient to establish a joint employment relationship or a single integrated enterprise. See

Huer Huang, 459 F.Supp.3d at 588-89; Solis v. ZEP LLC, 19cv4230 (JGK), 2020 WL

1439744, at *8 (S.D.N.Y. Mar. 24, 2020); Bravo v. Established Burger One LLC, No. 12

Civ. 9044(CM), 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (dismissing claims against

corporate principals charged as individual defendants under theory of single integrated

enterprise where "Plaintiffs allege no specific facts, aside from the elements of the 'economic

reality test,' to satisfy their pleading burden"). Moreover, the pleading's vague depiction of

all four defendants as joint employers with control over plaintiffs' employment was flatly

contradicted by plaintiffs' testimony at the inquest hearing. In the face of this contrary

evidence, the Court is entitled to reject refuted allegations in the pleading that all four

defendants together were plaintiffs' joint employers. See Chuchuca, 2014 WL 6674583, at *9

(rejecting pleading's allegations regarding joint employers based on "[p]laintiff's own

testimony" at the inquest hearing).

The evidence adduced at the hearing established that defendants Edgar Alvarez and

Rodrigo Gonzalez owned and operated Capybara, where each plaintiff worked. See 1/14/22

Tr. at 18-21, 22, 31-33, 36-37; 2/10/22 Tr. at 9-12, 14-15, 17-18. However, the only facts

connecting defendant La Oficina (which operated as Puerto De Manta) to the other defendants

is that Alvarez, who allegedly owned Puerto De Manta, was a minority owner of Capybara;

the two restaurants were located in close proximity to each other at 853 and 859 Wyckoff

Avenue; and the restaurants occasionally shared supplies and workers. See 1/14/22 Tr. at 30;

2/10/22 Tr. at 5, 12, 16.  These facts are insufficient to hold defendant La Oficina liable for

labor violations at Capybara or to hold Gonzalez, San Cecilio's majority shareholder, liable for

labor violations at Puerto De Manta.  Two restaurants may share common ownership,

ingredients and, on occasion, employees, yet operate independently, including their labor

relations.

    To be sure, Mr. Lira testified that Edgar Alvarez — a common owner of the two

restaurants — occasionally instructed him to help out at Puerto De Manta.  See 2/10/22 Tr. at

20.  Nevertheless, plaintiffs have not established "an interrelation of operations or centralized

control of labor relations" between the corporate defendants (or their restaurants), which is

required to treat them as a single integrated enterprise.  Even assuming that Edgar Alvarez is a

partial common owner of both corporate defendants, some common ownership is not

determinative of whether the two corporations jointly controlled plaintiffs as employees.  See

Huer Huang, 459 F.Supp.3d at 588; Solis, 2020 WL 1439744, at *8; Lopez v. Acme Am.

Envt'l Co., Inc,. No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012)

("Allegations of common ownership and common purpose, without more, do not answer the

fundamental question of whether each corporate entity controlled Plaintiffs as employees.");

Robles v. Argonaut Rest. & Diner, Inc., No. 05 CV 5553(JSR), 2009 WL 3320858, at *2

(S.D.N.Y. Oct. 9, 2009) (common ownership of two corporations by same shareholder does

not establish single enterprise).  Entirely absent in this case are the common hallmarks of a

single integrated enterprise among restaurants, such as using the same menu, joint advertising

and marketing, and common pay policies.  See, e.g., Yap v. Mooncake Foods, Inc., 146

F.Supp.3d 552, 559 (S.D.N.Y. 2015) (pleading sufficiently alleged that four restaurants

constituted a single integrated enterprise in light of factual allegations of shared CEO, common kitchen and delivery manager, shared menu and website and shared recordkeeping); Juarez, 29 F.Supp.3d at 367-68 (complaint sufficiently alleged that four diners operated as a single integrated enterprise where a single individual owned, managed and oversaw operations at all of the diners, all diners had the same décor, used the same menus and required workers to wear the same uniform); Bravo, 2013 WL 5549495, at *8 (finding pleading sufficiently alleged that Good Burger Corporate defendants functioned as "single integrated enterprise," where five locations of restaurant chain jointly advertised, marketed themselves as one entity, used the same menus and paid employees using "the same payroll methods from a central office"); see also Hsieh Liang Yeh v. Han Dynasty, Inc., 18 CIV. 6018 (PAE), 2019 WL 633355, at *8 (S.D.N.Y. Feb. 14, 2019) (identifying factors including, "common decor, name, menu, and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses").

In contrast to the cases finding a single integrated enterprise, here there is no evidence that La Oficina (which operated as Puerto De Manta) possessed authority over plaintiffs Carlos Espinoza or Samantha Lira, who never worked at Puerto De Manta, or that defendants San Cecilio (which operated as Capybara) and Rodrigo Gonzalez, its majority shareholder, exercised control over plaintiff Alberto Lira for the brief period when he worked at Puerto De Manta.  See Huer Huang, 459 F.Supp.3d at 588-89; Chui-Fan Kwan v. Sahara Dreams Co. II. Inc., No. 17-CV-4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018) (granting motion to dismiss where pleading contained only boilerplate allegations that corporate and

individual defendants shared centralized control over operations and employees); Apolinar, 2016 WL 2903278, at *4-5 (dismissing claims against several corporations and an owner, in the absence of non-conclusory allegations that defendants "had any sort of direct employer responsibility over them, such as the ability to hire or fire, or set work hours or job responsibilities"); Santana v. Fishlegs LLC,  No. 13 Civ.  01628(LGS), 2013 WL 5951438, at *3, *8 (S.D.N.Y Nov. 7, 2013) (dismissing claim on account of insufficient allegations that multiple restaurants were a single integrated enterprise); Lopez, 2012 WL 6062501, at *5 (finding allegations insufficient to plead the requisite "relationship of control" between corporate defendants).

On the other hand, plaintiffs have established that Edgar Alvarez, Rodrigo Gonzalez and San Cecilio constituted their joint employers while they worked at Capybara.  Each plaintiff testified that Rodrigo Gonzalez and Edgar Alvarez were co-owners of Capybara.  See 1/14/22 Tr. at 20-21, 22, 33; 2/10/22 Tr. at 5, 10-11, 12, 14-15, 22-26, 35.  They further testified that Rodrigo Gonzalez was a manager at Capybara; Gonzalez was involved in hiring plaintiffs Samantha Lira and Carlos Espinoza; and Gonzalez set employees' work schedules, supervised them, and directly paid their wages.  See 1/14/22 Tr. at 18-21, 36; 2/10/22 Tr. at 15, 22-24, 26, 29, 32; see also id. 1/14/22 Tr. at 35 (Gonzalez fired female manager).  Each plaintiff also testified that Edgar Alvarez acted as a manager at Capybara, including hiring Alberto Lira, supervising plaintiffs' work and setting plaintiffs' work schedules.  See 1/14/22 Tr. at 21, 32-34, 36-37; 2/10/22 Tr. at 5, 7, 9-12, 18, 20, 25.  This evidence is sufficient to find that defendants San Cecilio, Edgar Alvarez and Rodrigo Gonzalez were plaintiffs' joint "employers" under the FLSA and NYLL, with respect to plaintiffs' employment at Capybara.

See, e.g., Herman, 172 F.3d at 139; Rahman, 2021 WL 2003111, at *2; Vargas, 2018 WL 1545699, at *6; Moon, 248 F.Supp.2d at 237-38 (holding that corporate officer who "played an intimate role in the day-to-day operations of the hotel" and "supervis[ed] and determin[ed] plaintiff's work responsibilities[,]" was plaintiff's "employer" and was jointly and severally liable along with corporation).[13]

In addition, the uncontroverted allegation that La Oficina owned and operated Puerto De Manta, coupled with supporting circumstantial evidence,[14] is sufficient to establish that corporate defendant's liability for unpaid wages that are owed to Alberto Lira, during the time that he worked at Puerto De Manta. In other words, Alberto Lira has sufficiently alleged that La Oficina was his employer for purposes of the FLSA and NYLL. On the other hand, there is no evidence that Alvarez functioned as Alberto Lira's employer when Mr. Lira worked at Puerto De Manta. According to Mr. Lira, Monica, the manager of Puerto De Manta, told him that Alvarez was the owner of the restaurant, and that Mr. Lira assumed that Alvarez had the authority to fire him. See 2/10/22 Tr. at 12. Nevertheless, Mr. Lira also testified that he had no contact with Alvarez while Mr. Lira worked at Puerto De Manta and never saw Alvarez after late-December 2019. See id. at 17-19. Monica hired Mr. Lira, set his schedule and

---

[13] Plaintiffs bring their FLSA claims pursuant to theories of both "enterprise coverage" and "individual coverage." See Compl. ¶¶ 49-53. Although the Complaint's allegations concerning the annual gross volume of business done (i.e., in excess of $500,000) are stated in the aggregate among defendants, and its allegations are sparse regarding plaintiffs' handling of goods that moved in commerce, courts addressing motions for default judgment have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement. See Vargas, 2018 WL 1545699, at *5-6; Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015). In any event, plaintiffs' damages are all recoverable under the NYLL, which contains no such requirements.

[14] See supra note 2, at p. 4.

salary, and supervised his duties.  See id. at 18, 19.  A finding of liability requires "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation[.]"  Irizarry, 722 F.3d at 109.  The evidence submitted is insufficient to find that Alvarez was Mr. Lira's "employer" under the FLSA and the NYLL, during the time that Mr. Lira worked at Puerto De Manta.  See Lu v. Nisen Sushi of Commack, LLC, 18-CV-7177 (RJD) (ST), 2020 WL 9814084, at *5 (E.D.N.Y. Mar. 14, 2020) (finding allegations against individual defendant insufficient where the complaint did no "more than merely state that Defendant Beer had ownership interest and had operational control"); Hsieh Liang Yeh, 2019 WL 633355, at *7 ("the allegation that [individual defendants] held ownership positions does not by itself make them [plaintiff's] employer"); Bravo, 2013 WL 5549495, at *6-7 (dismissing claims against individual defendants who were alleged to be principals of corporate defendants).

### 2.    Minimum Wages

Both the FLSA and the NYLL require that employees be paid a minimum hourly rate. See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  The applicable NYLL minimum wage rate for small employers in New York City was $13.50 per hour in 2019, and $15.00 per hour in 2020, the relevant time period for all plaintiffs.  See N.Y. Lab. Law § 652(1)(a)(ii).[15]  The federal minimum wage rate was $7.25.  See 29 U.S.C. § 206(a)(1)(C).  This Court applies the higher of the two rates.  See 29 C.F.R. § 778.5; Fermin, 93 F.Supp.3d at 43.

---

[15] These rates applied to employees of New York City employers with 10 or fewer employees.  See N.Y. Lab. Law § 652(1)(a)(ii).  Although plaintiffs sought to use the higher rates applicable to large employers, plaintiffs uniformly testified that Capybara and Puerto De Manta had no more than 10 employees.  See 1/14/22 Tr. at 25-26; 2/10/22 Tr. at 13, 14, 31.

As to plaintiff Espinoza, he was paid $14 per hour in 2020 (when the minimum wage was $15), and was not paid at all for some of the hours he worked at Capybara.  Plaintiff Alberto Lira was paid $15 per hour for part of his tenure at Capybara, but was otherwise paid less than the applicable minimum wage or received no wages at all.  Plaintiff Samantha Lira was paid $8.50 per hour for her work at Capybara, but was denied any wages for certain time periods.  Plaintiffs therefore state a claim for failure to pay the minimum wage under NYLL against defendants San Cecilio, Alvarez and Gonzalez.[16]

Regarding Alberto Lira's short tenure at Puerto De Manta, he was offered and agreed to be paid $100 per day, and he worked four days per week, for eight hours per day.  For purposes of the FLSA, when an employee is "paid a flat sum for a day's work[,]" that employee's regular hourly rate is calculated by "totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked."  29 C.F.R. § 778.112; see Calle, 2017 WL 6942652, at *12.  New York law provides for the same formula in the circumstances presented here.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5.  Therefore, Alberto Lira's hourly rate was $12.50 per hour ($400 per week ÷ 32 hours), below the applicable minimum wage.

### 3.      Agreed-Upon Wage

In addition to their minimum wage claims, each plaintiff further established that defendants San Cecilio, Alvarez and Gonzalez failed to pay them their agreed-upon wages in violation of the NYLL.  Plaintiffs have asserted that, despite their agreements with defendants, defendants failed to pay them for all of the straight-time hours that they worked.  See 2/10/22

---

[16] Except for the periods for which they received no pay, plaintiffs' hourly rates exceeded the $7.25 federal minimum wage rate.

33

Tr. at 7, 8, 29-30; S. Lira ¶ 12; Compl. ¶¶ 27, 32, 37.  Plaintiffs have sufficiently

demonstrated that they were not paid their earned wages in accordance with the agreed terms

of employment at Capybara, as required by the NYLL, and they are therefore entitled to

recover those unpaid wages.

### 4.    Overtime

Plaintiffs have also sufficiently alleged claims against defendants San Cecilio, Alvarez

and Gonzalez for unpaid overtime under the FLSA and the NYLL.  Each plaintiff testified that

he or she regularly worked at Capybara in excess of 40 hours per week, but was not paid the

requisite premium for those overtime hours.

### 5.    Spread-of-Hours

Plaintiff Espinoza seeks recovery for spread-of-hours compensation for one hour's pay

at the basic minimum hourly wage rate for each day that he worked more than ten hours.  See

Compl. ¶ 67; Espinoza Aff. ¶ 17.  As Espinoza testified that from December 24, 2019 until

January 20, 2020, he worked at Capybara more than 10 hours on every workday but was not

paid spread-of-hours wages, he states a claim for relief against San Cecilio and (assuming they

were properly served) the two individual defendants.

### 6.    Wage Theft Prevention Act

Plaintiffs sufficiently allege that defendants failed to provide each plaintiff with the

wage notice required by the WTPA, section 195(1)(a) of the NYLL.  See Compl. ¶ 74; see

also 1/14/22 Tr. at 26; 2/10/22 Tr. at 9, 31.  Additionally, the Complaint sufficiently alleges

that defendants failed to provide plaintiffs with proper wage statements, in violation of section

195(3) of the NYLL.  See Compl. ¶ 76; see also 1/14/22 Tr. at 26; 2/10/22 Tr. at 9, 31.

Therefore, plaintiffs have adequately stated claims for violations of the WTPA by each

defendant, see Vazquez v. 142 Knickerbocker Enter., Corp., 409 F.Supp.3d 81, 89

(E.D.N.Y. 2018), as discussed below in the damages section of this opinion.

## IV.    Damages

Although the Court must accept as true the well-pleaded, uncontroverted factual

allegations contained within plaintiffs' Complaint as to defendants' liability, it need not give

the same deference to plaintiffs' allegations regarding damages.  Instead, the Court must

perform an inquiry to determine the extent of damages to a "reasonable certainty."  Credit

Lyonnais Secs., 183 F.3d at 155.  "A hearing is required . . . where plaintiffs have submitted

declarations that contain inconsistencies or raise credibility issues."  Villanueva v. 179 Third

Ave. Rest Inc., 500 F.Supp.3d 219, 225 n.2 (S.D.N.Y. 2020) (citing Hernandez Gomez v. 4

Runners, Inc., 769 F.App'x 1, 3-4 (2d Cir. 2019)), adopted, 2021 WL 2139441 (S.D.N.Y.

May 26, 2021).

Under both the FLSA and NYLL, an employer is required to maintain "records of the

wages, hours, and persons employed by him."  Chen, 2016 WL 2909966, at *9 (quoting

Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011 WL

4962397, at *2 (E.D.N.Y. Oct. 18, 2011)).  Where, as here, defendants, having defaulted,

failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing

how many hours he or she worked 'by relying solely on his or her recollection.'"  Chen, 2016

WL 2909966, at *9 (citation omitted); see Vilchis, 2016 WL 6106478, at *5.

Nevertheless, the Court must ensure that plaintiffs' approximations and estimates are

reasonable and appropriate.  See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y.

2012).  Furthermore, "[r]egardless of the evidence submitted, the plaintiff's recovery is limited

to the amount and type pleaded in the Complaint." Hernandez, 2019 WL 643735, at *5 (citing

Fed. R. Civ. P. 54(c); Silge, 510 F.3d at 160).

### A.     Total Minimum Wage, Agreed-Upon Wage and Overtime Compensation

To calculate a plaintiff's minimum wage and overtime wage compensation, the Court

must first determine that plaintiff's regular hourly wage rate. Where, as here, an employee "is

employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'" 29

C.F.R. § 778.110(a); see Candelario-Salazar v. Kings II Deli & Grocery, Inc., No. 20-CV-

760 (MKB) (SMG), 2020 WL 8413558, at *4 (E.D.N.Y. Dec. 28, 2020), adopted, 2021 WL

129062 (E.D.N.Y. Jan. 14, 2021); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(a) (the

regular rate "shall mean the amount that the employee is regularly paid for each hour of

work"). As discussed above, for his work at Puerto De Manta, Alberto Lira was paid a daily

rate, which, on an hourly basis, fell below the applicable minimum wage rate established by

the NYLL. The uncontested evidence shows that each plaintiff was paid below the applicable

NYLL minimum wage for at least part of his or her employment and plaintiffs thus have

established NYLL minimum wage violations.

In addition, although the FLSA provides for recovery of unpaid "straight time" wages

only up to the minimum wage, plaintiffs are entitled to recover all agreed-upon wages under

the NYLL. See cases cited supra pp. 24-25.

Turning next to the calculation of unpaid overtime, plaintiffs are entitled to recover

unpaid overtime premium wages under the FLSA and the NYLL. See 29 U.S.C. § 207(a)(1)

(mandating that an employee who works in excess of 40 hours per week must be paid for the

excess hours at a premium overtime rate); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4

(same).  Under both the FLSA and NYLL, the overtime rate adds a 50-percent premium to the employee's regularly hourly rate.  See 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid, in addition to the straight-time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate . . . .").

### 1. Carlos Espinoza

In connection with his work at Capybara, Mr. Espinoza was promised that he would be paid $14 per hour—less than the applicable $15 per hour minimum wage in 2020.  Mr. Espinoza was not paid any wages for his work from December 25, 2019 until his employment ended on January 20, 2020.  Nor was Mr. Espinoza paid an overtime premium for those hours worked in excess of 40 hours per week.  Accordingly, based upon the hours worked and applicable wage rate, this Court recommends awarding damages to Mr. Espinoza for unpaid minimum or agreed-upon wages and overtime wages as follows:

| Time Period | Hours per Week | Regular Rate | Wage Owed per Hour[17] | Wage Owed per Week | OT Hours per Week | OT Owed per Hour | OT Owed per Week | Weeks | Total |
|---|---|---|---|---|---|---|---|---|---|
| 7/1/19-12/24/19 | 54 | $14.00 | $0.00 | $ 0.00 | 14 | $7.00 | $98.00 | 25[18] | $2,450.00 |
| 12/25/19-12/31/19 | 78 | $14.00 | $14.00 | $1,092.00 | 38 | $7.00 | $266.00 | 1 | $1,358.00 |
| 1/1/20-1/20/20 | 78 | $14.00 | $15.00 | $1,170.00 | 38 | $7.50 | $285.00 | 3 | $4,365.00 |
| TOTAL | | | | | | | | | $8,173.00 |

### 2.   Alberto Lira Flores

For his work at Capybara, Alberto Lira is entitled to damages only for the limited period from December 25, 2019 until January 20, 2020, when he worked 10 hours per day, six days per week, with a 30-minute break daily, for a total of 57 hours, for which he was paid only $300.[19]  Based on those facts, the Court recommends awarding damages to Mr. Lira for unpaid agreed-upon and overtime wages at Capybara, as follows:

| Time Period | Hours per Week | Regular Rate | Wage Owed per Hour[20] | Wage Owed per Week | OT Hours per Week | OT Owed per Hour | OT Owed per Week | Weeks | Total |
|---|---|---|---|---|---|---|---|---|---|
| 12/25/19-1/20/20 | 57 | $15.00 | $15.00 | $855.00 | 17 | $7.50 | $127.50 | 4 | $3,930.00 ($300 paid) |
| TOTAL | | | | | | | | | $3,630.00 |

---

[17] For 2019, the wage owed per hour is based on Espinoza's agreed-upon rate.  For 2020, the wage owed per hour is based on the minimum wage, which had increased to $15.00 per hour.

[18] Where the time period includes partial weeks, the Court rounds to the nearest full week.  See Villar, 2017 WL 1333582, at *9 nn.13-15.

[19] From August 9, 2019 to December 24, 2019, Alberto Lira worked fewer than 40 hours per week and was paid above the applicable minimum wage, at his agreed-upon hourly rate of $15.

[20] Mr. Lira's agreed-upon rate of $15 per hour was the same as the applicable minimum wage in 2020.

During his tenure at Puerto De Manta, from January 21, 2020 until his employment ended on March 6, 2020, Mr. Lira worked four days per week (8 hours per day) and was paid $100 per day. As discussed above, Mr. Lira's effective regular rate was thus $12.50 per hour—below the NYLL minimum wage. In addition, he was not paid for his final two days of work. For that last week, Mr. Lira's effective regular rate was $6.25 per hour ($200÷32 hours). Accordingly, the Court recommends awarding Mr. Lira damages for unpaid minimum wages as follows:

| Time Period | Hours per Week | Regular Rate | Min. Wage Owed per Hour | Min. Wage Owed per Week | Weeks | Total |
|---|---|---|---|---|---|---|
| 1/21/20-3/2/20 | 32 | $12.50 | $2.50 | $80.00 | 6 | $480.00 |
| 3/3/20-3/6/20 | 32 | $6.25 | $8.75 | $280.00 | 1 | $280.00 |
| **TOTAL** | | | | | | **$760.00** |

### 3. <u>Samantha Lira</u>

Except for the period from December 27, 2019 to January 4, 2020, Ms. Lira worked at Capybara from September 2019 through January 18, 2020, for 49.5 hours per week. Ms. Lira was paid approximately $8.50 per hour until December 27, 2019, and was paid no wages for her work from January 5 through January 18, 2020. This Court recommends awarding damages to Ms. Lira for unpaid minimum and overtime wages as follows:

| Time Period | Hours per Week | Regular Rate | Min. Wage Owed per Hour | Min. Wage Owed Per Week | OT Hours per Week | OT Owed Per Hour | OT Owed Per Week | Weeks | Total |
|---|---|---|---|---|---|---|---|---|---|
| 9/1/19-12/27/19 | 49.5 | $8.50 | $5.00 | $247.50 | 9.5 | $6.75 | $64.13 | 17 | $5,297.71 |
| 1/5/20-1/18/20 | 49.5 | $8.50 | $15.00 | $742.50 | 9.5 | $7.50 | $71.25 | 2 | $1,627.50 |
| TOTAL | | | | | | | | | $6,925.21 |

### B.      Spread-of-Hours Compensation

By regulation, hospitality workers in New York, regardless of their regular rate of pay, are entitled to compensation of one hour's pay at the basic minimum wage rate for each day worked in excess of 10 hours.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d). Plaintiff Espinoza worked in excess of 10 hours per day, at least six days per week, from December 25, 2019 through January 20, 2020.  Mr. Espinoza is therefore entitled to spread-of-hours pay for 24 days (6 days x 4 weeks) in the amount of $351.00 ($13.50 x 6 days + $15.00 x 18 days).

### C.      Liquidated Damages

Plaintiffs request liquidated damages under the FLSA and NYLL.  See Compl. ¶¶ 60, 70; Pl. Mem. at ECF pp. 19-22.  Under the FLSA, an employer who violates the minimum wage or overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.  29 U.S.C. §§ 216(b), 260.  As a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.  See Peralta v. M & O Iron Works, Inc., No. 12

40

CV 3179 (ARR)(RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 2, 2014).  Therefore, plaintiffs are entitled to awards of liquidated damages under the FLSA.

The NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."  N.Y. Lab. Law § 663(1).  Liquidated damages under the NYLL are likewise calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.  See id.  Nevertheless, because "there are no meaningful differences" between the FLSA and the NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Since the NYLL provides for a higher minimum wage and thus, in the circumstances presented here, a greater amount of premium overtime pay, the Court recommends awarding liquidated damages under the NYLL.  See Fan, 2019 WL 1549033, at *11.  Accordingly, applying 100 percent liquidated damages as required by the NYLL, the Court recommends awarding plaintiffs liquidated damages for unpaid wages under the NYLL as follows:

| Plaintiff | Minimum or Agreed-Upon Wages | Overtime Wages | Spread of Hours | Liquidated Damages |
|---|---|---|---|---|
| Espinoza | $4,602.00 | $3,571.00 | $351.00 | $8,524.00 |
| A. Lira (Capybara) | $3,120.00 | $510.00 | $0.00 | $3,630.00 |
| (Puerto De Manta) | 760.00 | $0.00 | $0.00 | $ 760.00 |
| S. Lira | $5,692.50 | $1,232.71 | $0.00 | $6,925.21 |

Thus, defendant San Cecilio is liable (jointly and severally with defendants Alvarez and Gonzalez in the event the District Court finds proper service) for unpaid wages, spread of hours, and an equal amount in liquidated damages, as follows:

| Plaintiff | Minimum or Agreed-Upon Wages | Overtime Wages | Spread of Hours | Liquidated Damages | Total |
|---|---|---|---|---|---|
| Espinoza | $4,602.00 | $3,571.00 | $351.00 | $8,524.00 | $17,048.00 |
| A. Lira | $3,120.00 | $510.00 | $0.00 | $3,630.00 | $7,260.00 |
| S. Lira | $5,692.50 | $1,232.71 | $0.00 | $6,925.21 | $13,850.42 |
| **Total** | **$13,414.50** | **$5,313.71** | **$351.00** | **$19,079.21** | **$38,158.42** |

Defendant La Oficina is liable to Alberto Lira in the amount of $760.00 in unpaid minimum wages and $760.00 in liquidated damages.

### D.   Statutory Damages under the WTPA

Under the WTPA, plaintiffs are entitled to "$50 per workday after February 27, 2015, up to $5,000 for failure to provide a wage notice." Gil v. Frantzis, 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *10 (E.D.N.Y. Aug. 17, 2018), adopted as modified on other grounds, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018); see N.Y. Lab. Law § 198(1-b). Plaintiffs are also entitled to "$250 per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a wage statement." Gil, 2018 WL 4522094, at *10; see N.Y. Lab. Law § 198(1-d).

Here, plaintiffs worked at Capybara during 2019 to 2020, and never received a proper wage notice or wage statement. As each plaintiff worked at Capybara for over 100 workdays, each is entitled to recover, from San Cecilio and the two individual defendants (assuming proper service on the latter), the statutory maximum for both the wage notice and the wage statement violations.

For Alberto Lira's tenure at Puerto De Manta, he did not receive a wage notice or wage statement. Mr. Lira worked approximately 28 days at that restaurant (4 days/week x 7 weeks). Therefore, Mr. Lira is entitled to recover $1,400 ($50 x 28 days) from defendant La

Oficina for failing to provide him with a wage notice, and $5,000 from defendant La Oficina for failing to provide him with a wage statement.

Accordingly, the Court recommends that the District Court award plaintiffs a total of $10,000 each from defendant San Cecilio (and potentially Alvarez and Gonzalez, jointly and severally), for violating the WTPA's wage notice and statement requirements. The Court further recommends awarding Alberto Lira $6,400 as against La Oficina for violating the WTPA.

### E.    Interest

#### 1.    Prejudgment Interest

Plaintiffs request prejudgment interest pursuant to New York law. See Compl. ¶ 85(j); Pl. Mem. at ECF pp. 28-29. "Although it is 'well settled that prejudgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award of both liquidated damages and prejudgment interest." Lopez v. Royal Thai Plus, LLC, 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018) (citations and quotations omitted), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). Prejudgment interest is available for unpaid minimum and overtime wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or on liquidated damages, see Fermin, 93 F.Supp.3d at 49.

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both FLSA and NYLL." Thomas v. Good Vision Taste Inc., No. 17-CV-6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018) (quotations omitted), adopted as modified on other grounds, 2019 WL 4265868 (E.D.N.Y.

Sept. 5, 2018). Courts that have awarded prejudgment interest in such cases have reasoned that plaintiffs "should be permitted to recover under the statute that provides the greatest relief, which in this case is the NYLL." Santana v. Latino Express Rests., Inc., 198 F.Supp.3d 285, 294 (S.D.N.Y. 2016) (citations and quotations omitted). Judge Brodie, to whom the instant case is assigned, has awarded prejudgment interest where, as here, the plaintiffs were receiving damages under the NYLL rather than under the FLSA. See Neri v. Abi Japanese Rest., Inc. 20-CV-581 (MKB), 2021 WL 6804252, at *12 n.21 (E.D.N.Y. Nov. 29, 2021); see also Candelario-Salazar, 2021 WL 129062, at *1 (Judge Brodie adopting report and recommendation awarding pre-judment interest on amounts recovered on overlapping FLSA and NYLL claims).[21]

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum." Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001). Where "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." Id. (quotations omitted). "The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest." Asfaw v. BBQ Chicken Don Alex No. 1 Corp., 14-CV-5665 (CBA)(RML), 2015 WL 13731362, at *17

---

[21] Other courts, including this one, have concluded that prejudgment interest should be awarded only on damages arising out of "non-overlapping NYLL claims" – that is, minimum wage, overtime and spread-of-hours claims for which there is no corresponding FLSA violation. See, e.g., De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc., 20-CV-3003 (AMD), 2021 WL 2227977, at *9 (E.D.N.Y. May 11, 2021), adopted, 2021 WL 2223275 (E.D.N.Y. June 2, 2021); McFarlane v. Harry's Nurses Registry, 17-CV-6350 (PKC)(PK), 2020 WL7186791, at * 4 (E.D.N.Y. Dec. 7, 2020) (Chen, J.) (collecting cases); Sun v. China 1221, Inc., No. 12-CV-7135 (RJS), 2016 WL 1587242, at *5-6 (S.D.N.Y. Apr. 19, 2016). Given the unsettled state of the law, and Judge Brodie's decision in Neri, this opinion follows Judge Brodie's approach.

(E.D.NY. Aug. 26, 2015).  The date from which to compute prejudgment interest is left to the discretion of the court.  See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994); RKI Constr., LLC v. WDF Inc., No. 14-cv-1803(KAM)(VMS), 2020 WL 6545915, at *22 (E.D.N.Y. Nov. 6, 2020).

Although plaintiffs recognize that the Court may apply a single reasonable intermediate date for the accrual of interest, see Pl. Mem. at ECF p. 29, their Proposed Judgment uses the date that each plaintiff's unpaid minimum wages or overtime wages claims began to accrue, see Proposed Judgment (July 8, 2021), DE #61-12.  The Court, in exercising its discretion, recommends adopting, as the proposed interest accrual date, the midpoint of each plaintiff's wage deficiency.  For plaintiff Espinoza, such interest is calculated from October 10, 2019 on a principal of $8,524.00, as against defendant San Cecilio (and potentially Alvarez and Gonzalez, jointly and severally).  For plaintiff Alberto Lira, such interest is calculated from January 7, 2020 on a principal of $3,630.00, as against defendant San Cecilio (and potentially Alvarez and Gonzalez, jointly and severally); and from February 12, 2020 on a principal of $760.00, as against defendant La Oficina.  For plaintiff Samantha Lira, such interest is calculated from November 19, 2019 on a principal of $6,925.21, as against defendant San Cecilio (and potentially Alvarez and Gonzalez, jointly and severally).   Thus, this Court recommends awarding prejudgment interest, at the statutory rate, on plaintiffs' unpaid wage damages running from the midpoint between the aforesaid dates and the date judgment is entered.

### 2.    Post-Judgment Interest

Plaintiffs also request post-judgment interest.  See Compl. ¶ 85(k); Proposed Judgment. Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil

case recovered in a district court." Therefore, the Court recommends that plaintiffs be awarded post-judgment interest, "to be calculated from the date the Clerk of the Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961." Sajvin v. Singh Farm Corp., No. 17-CV-04032, 2018 WL 4214335, at *8 (E.D.N.Y. Aug. 13, 2018), adopted, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018).

### F. Fifteen Percent Increase Penalty

Plaintiffs additionally seek an automatic increase of 15 percent for any unpaid amount of the judgment still pending after 90 days. See Pl. Mem. at ECF p. 29. The NYLL provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4); see Rodriguez v. Solares Corp., No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), adopted, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This increase applies only to damages awarded under the New York Labor Law. See Candelario-Salazar, 2020 WL 8413558, at *8. Accordingly, plaintiffs' damages awarded under the NYLL should be increased by fifteen percent if defendants fail to timely satisfy the judgment.

### G. Attorney's Fees

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of reasonable attorney's fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Plaintiffs seek leave to file a motion for attorney's fees and costs. See Pl. Mem. at ECF p. 30. This Court respectfully recommends that the request be granted.

46

## **CONCLUSION**

For the foregoing reasons, the Court recommends that plaintiffs' motion for default judgment be granted in part, as follows: (1) that default judgment be denied as against the individual defendants Edgar Alvarez and Rodrigo Gonzalez for lack of effective service; (2) that default judgment be granted against defendant San Cecilio totaling $68,158.42, consisting of $13,414.50 in unpaid minimum or agreed-upon wages, $5,313.71 in unpaid overtime compensation, $351.00 in spread-of-hours compensation, $30,000 in statutory damages, and $19,079.21 in liquidated damages; (3) that default judgment be granted against defendant La Oficina totaling $7,920.00, consisting of $760.00 in unpaid minimum wages, $6,400.00 in statutory damages, and $760.00 in liquidated damages; (4) that plaintiffs be awarded pre-judgment interest against each defendant at the rate of 9 percent per year as discussed herein, until the date final judgment is entered; (5) that plaintiffs be awarded post-judgment interest against each defendant at the statutorily prescribed rate from the date judgment is entered until the judgment is paid; and (6) that plaintiffs be awarded an automatic increase of 15 percent, as provided by New York Labor Law § 198(4), if any amounts awarded here remain unpaid upon the expiration of 90 days following the entry of judgment, or 90 days after expiration of the time to appeal and no appeal is then pending, whichever is later.

In the alternative, in the event that the District Court declines to adopt this Court's recommendation that plaintiffs' motion for default judgment be denied as against defendants Edgar Alvarez and Rodrigo Gonzalez, this Court recommends that the judgment against San Cecilio be entered jointly and severally against defendants San Cecilio, Alvarez and Gonzalez.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before March 18, 2022. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court file and to send copies to defendants San Cecilio Restaurant Inc, Edgar Alvarez and Rodrigo Gonzalez at 853 Wyckoff Avenue, Ridgewood, NY 11385 and defendants La Oficina Bar Corp and Edgar Alvarez at 859 Wyckoff Avenue, Ridgewood, NY 11385.

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**             March 1, 2022**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**